THOMAS, J.:
*525 **306 David Alan White appeals his convictions of assault and battery of a high and aggravated nature (ABHAN) and possession of a weapon during the commission of a violent crime. On appeal, White argues the trial court erred by (1) indicating he could not pursue both the defense of accident and self-defense, (2) excluding and limiting his testimony about Joseph **307 Johnson's statements, (3) denying his request for a jury instruction on self-defense, and (4) denying his request for a lesser-included instruction on second-degree assault and battery. We reverse.
FACTS AND PROCEDURAL HISTORY
On the night of November 27, 2013, Johnson cut White's hair. Sometime later, White cut Johnson's throat.
White and Johnson were both guests at a friend's backyard gathering. Seven witnesses testified to the events surrounding the incident. Some recalled White and Johnson joking with each other and did not know what caused White to cut Johnson's throat. Others recalled tense interactions between the two.
White testified he did not mean to injure Johnson and did not aim for Johnson's throat. As White was explaining the conversation he and Johnson had while Johnson cut his hair, the State objected on the basis of hearsay. During an in camera hearing, White testified Johnson told him he used to make shanks in prison. White also testified Johnson told him he had a gun and knife underneath his moped seat. The trial court ruled the shank statement was not admissible because it was a prior act and not relevant to self-defense or accident. However, the trial court allowed White to use the statement to impeach Johnson's earlier testimony that he did not make shanks in prison. The trial court excluded the statement regarding the weapons, finding it was irrelevant and hearsay.
When White resumed his testimony, he indicated he decided to leave Washington's house and, as he was walking, someone punched him on the side of his head. White stated he had one hand in his pocket and quickly spun around after he was punched. White then noticed Johnson was injured. White explained why he wanted to leave Washington's house: "Because the way things were going in that backyard ... it could have been worse than what happened" and he "didn't feel comfortable anymore." White clarified he did not mean to swing the knife and did not intend to stab Johnson.
White stated he "didn't feel threatened but [he] knew [he] had a lot of head injuries in [his] past that [he] thought could have triggered something." White explained the head injuries he suffered in the past: (1) he was hit on the side of his head **308 with a mug and had to get stitches, (2) he was hit by a window pane and had to get stitches, and (3) he had a brain aneurysm. White testified he did not run because he "was more scared than anything" and "did not know" if he could get away safely. He did not believe he could get away because he felt threatened by his conversation with Johnson. White indicated his intent in swinging his arm toward Johnson was to protect himself. White explained why he swung the knife: "Because I got hit; it was a reaction. I didn't realize that I even had the knife like that in my hand in my pocket. I just spin around real quick. I didn't know it was him behind me that close or whatever when I swung my arm." Later, White testified he knew it was Johnson who hit him. White stated he was fearful of Johnson.
White requested the trial court charge the jury on the defenses of self-defense and accident and the lesser-included offenses of ABHAN, first-degree assault and battery, and second-degree assault and battery. The trial court charged accident, ABHAN, and first-degree assault and battery but refused to charge self-defense and second-degree assault and battery. The jury found White guilty of ABHAN and possession of a weapon during the commission of a violent crime. The trial court sentenced him consecutively to five years' imprisonment for the weapons *526 conviction and ten years' imprisonment for the ABHAN conviction. This appeal followed.
STANDARD OF REVIEW
"In criminal cases, the appellate court only reviews errors of law and is clearly bound by the trial court's factual findings unless the findings are clearly erroneous." State v. Dickey , 394 S.C. 491, 498-99, 716 S.E.2d 97, 100 (2011).
JOHNSON'S STATEMENTS
White argues the trial court erred in excluding Johnson's statement about weapons on his moped and limiting Johnson's statement about shanks because the testimony was relevant to self-defense and was not hearsay. We agree the trial court should have admitted White's testimony regarding the weapons on Johnson's moped.[1]
**309 First, we find the statement was relevant to White's claim of self-defense.
"Evidence which is not relevant is not admissible." Rule 402, SCRE. "Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears." State v. Alexander , 303 S.C. 377, 380, 401 S.E.2d 146, 148 (1991). We agree with White's argument that the statement was relevant to explain why he believed he was in imminent danger and if that belief was reasonable. See State v. Davis , 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984) (explaining two of the elements of self-defense are whether "the defendant ... actually believed he was in imminent danger" and whether "a reasonably prudent man of ordinary firmness and courage would have entertained the same belief"). At trial, White testified he became uncomfortable and felt threatened throughout the night, in part because of Johnson's statement, and decided to leave. White indicated he did not believe he could safely leave after he was punched because of Johnson's statement and the possibility that Johnson may have had access to a weapon.
We disagree with the State's position that the statement was not relevant because White testified he did not know if Johnson was armed or whether it was Johnson who punched him. Although White did at times testify he did not know who hit him, he also testified he knew it was Johnson who hit him. Furthermore, although White admitted he did not know whether Johnson was armed and never testified he saw Johnson with a weapon, Johnson testified he accessed his moped directly before the incident. Therefore, it would be a jury question whether White intended to stab Johnson in self-defense and whether that was reasonable. In State v. Washington , this court rejected a defendant's argument that evidence a victim actually had weapons in the trunk of his car was relevant to show the defendant reasonably believed he was in imminent danger. 367 S.C. 76, 81-82, 623 S.E.2d 836, 839 (Ct. App. 2005), aff'd as modified , **310 379 S.C. 120, 665 S.E.2d 602 (2008). This court held the trial court did not err in excluding the testimony because the defendant had (1) no knowledge the victim had weapons in the trunk of his car on the day of incident, (2) no reason to believe the victim previously stored weapons in the trunk of his car, and (3) no reason to believe the victim accessed his trunk before he was stabbed. See id. White's case is factually distinct from Washington . Unlike in Washington , White testified Johnson said he kept a gun and a knife on his moped, and Johnson accessed his moped before the incident. Because White had reason to believe Johnson stored weapons on his moped and accessed his moped prior to the stabbing, we find Johnson's statement was relevant to White's self-defense claim.
Second, we find White's testimony about Johnson's statement was not hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. "It is well settled that evidence *527 is not hearsay unless offered to prove the truth of the matter asserted." State v. Vick , 384 S.C. 189, 199, 682 S.E.2d 275, 280 (Ct. App. 2009). We find the statement was not introduced to prove the truth of the matter asserted, i.e. that Johnson actually had a gun and knife on his moped. Instead, White offered the statement to show he believed Johnson had weapons on his moped. See State v. Griffin , 277 S.C. 193, 198, 285 S.E.2d 631, 634 (1981) (finding a trial court erred in not allowing a defendant to testify a friend told him the deceased owned a firearm because the testimony was offered "to show he believed the deceased owned a firearm, not to prove the deceased in fact owned a gun"), overruled on other grounds by State v. Belcher , 385 S.C. 597, 685 S.E.2d 802 (2009).[2] It was **311 relevant White thought Johnson was armed or could be armed, not whether Johnson was actually armed. Johnson's statement was, therefore, admissible to explain to the jury why White believed he was in imminent danger and to help it evaluate whether such a belief was reasonable. Therefore, we find the trial court abused its discretion in excluding the statement because it was relevant and not hearsay. See State v. Pagan , 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion.").
SELF-DEFENSE
White argues the trial court erred in limiting him to pursuing either self-defense or accident because South Carolina case law allows both defenses if there is evidence in the record to support them. White contends the trial court erred in refusing to charge self-defense because there was evidence to support the charge and the trial court improperly weighed the evidence. We agree.
"[An appellate court] will not reverse a trial court's decision regarding a jury instruction absent an abuse of discretion." State v. Stanko , 402 S.C. 252, 264, 741 S.E.2d 708, 714 (2013). "When reviewing the [trial] court's refusal to deliver a requested jury instruction, appellate courts must consider the evidence in a light most favorable to the defendant." State v. Williams , 400 S.C. 308, 314, 733 S.E.2d 605, 608-09 (Ct. App. 2012). "The law to be charged to the jury is determined by the evidence presented at trial." State v. Gaines , 380 S.C. 23, 31, 667 S.E.2d 728, 732 (2008). "If there is any evidence to support a jury charge, the trial [court] should grant the request." State v. Brown , 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct. App. 2004).
"Upon request, a defendant is entitled to a jury instruction on self-defense if he has produced evidence tending to show the four elements of that defense." Stone v. State , 294 S.C. 286, 287, 363 S.E.2d 903, 904 (1988). The four elements of self-defense are as follows:
**312 First, the defendant must be without fault in bringing on the difficulty. Second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger. Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily *528 injury than to act as he did in this particular instance.
Davis , 282 S.C. at 46, 317 S.E.2d at 453.
In this case, the trial court believed White did not have a valid self-defense case because he testified he stabbed Johnson unintentionally. The trial court went further to state that "accident and self-defense pretty well can't co-exist" and asked White which he would like to pursue. The trial court subsequently denied White's request to charge self-defense. While it is true accident and self-defense "are often mutually exclusive," a trial court should charge both when there is evidence in the record to support both charges. See Williams , 400 S.C. at 317, 733 S.E.2d at 610. In Williams , the defendant's "testimony at trial vacillated as to whether he acted intentionally or unintentionally when he shot the victim" which created a jury question "as to whether [he] shot the victim accidentally." Id. at 316-17, 733 S.E.2d at 610. Here, there was evidence White unintentionally stabbed Johnson and also evidence he intentionally stabbed Johnson.
Viewing the evidence in the light most favorable to White, we find there was some evidence to support each element of self-defense. See id. at 314, 733 S.E.2d at 608-09 ("When reviewing the [trial] court's refusal to deliver a requested jury instruction, appellate courts must consider the evidence in a light most favorable to the defendant."). As to the first element, White's testimony he was attempting to leave Washington's house when he was punched in the head from behind shows he was not at fault in bringing on the difficulty. As to **313 the second element, White testified he felt threatened by his conversation with Johnson, and he "was more scared than anything" after he was hit. We note at times White's testimony was contradictory regarding whether he felt threatened and whether he knew it was Johnson who hit him. However, we find there was some evidence White believed he was in imminent danger, and therefore, it was a jury question as to whether White actually believed he was in imminent danger. Likewise, it was a jury question whether White's belief was reasonable under the third element of self-defense. We note Johnson's statement that he kept a gun and knife on his moped and the fact that Johnson accessed the moped before the incident are evidence the jury could consider to find White's belief was reasonable. Finally, White's testimony he previously suffered multiple head injuries, had a brain aneurysm, and did not know if he could safely escape was some evidence tending to show he had no other probable means of avoiding the danger. Therefore, we find the trial court abused its discretion in refusing to charge self-defense where there was at least some evidence to support each element of self-defense and a jury could have believed White acted in self-defense when he stabbed Johnson. See State v. Day , 341 S.C. 410, 416-17, 535 S.E.2d 431, 434 (2000) ("If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the trial [court's] refusal to do so is reversible error." (emphasis added) (quoting State v. Muller , 282 S.C. 10, 316 S.E.2d 409 (1984) ).
CONCLUSION
Therefore, we find the trial court abused its discretion in excluding White's testimony regarding Johnson's statement and refusing to charge the jury on self-defense.[3] Accordingly, White's convictions for ABHAN and possession of a weapon during the commission of a violent crime are **314 REVERSED.[4]
SHORT and HILL, JJ., concur.

We find White's argument regarding the shank statement is not properly before this court because the trial court allowed White to testify about the statement. White does not point to any prejudice from the limitation or make any argument other than the testimony should have been admitted for a different reason. We make no determination regarding whether the admission for impeachment purposes was proper.

Other jurisdictions have similarly held statements were not hearsay when they were offered to show the effect of the statement on the listener's state of mind when the listener's state of mind was relevant to the case. See People v. Kline , 90 Ill.App.3d 1008, 46 Ill.Dec. 419, 414 N.E.2d 141, 144 (1980) ("If the out-of-court statements are offered to prove the resultant effect of those words on the listener's state of mind, then the speaking of the words is independently relevant regardless of the truth of their content and the statements are admissible as non-hearsay."); Sullivan v. Popoff , 274 Or.App. 222, 360 P.3d 625, 633 (2015) (De Muniz, S.J., concurring) ("[A]n out-of-court statement may be offered to show that the making of that statement had some effect on the person who heard the statement if that person's state of mind is relevant to an issue in the case.").

Because the self-defense issue is dispositive, we decline to address White's remaining argument regarding the trial court's refusal to charge the jury on the lesser-included offense of second-degree assault and battery. See Hughes v. State , 367 S.C. 389, 408-09, 626 S.E.2d 805, 815 (2006) (noting an appellate court need not reach remaining issues on appeal when a decision on another issue is dispositive).

We decide this case without oral argument pursuant to Rule 215, SCACR.